UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAY.COM, INC.,<br><br>       Plaintiff,<br><br>  v.<br><br>MOHINDER SINGH, et al.,<br><br>       Defendants. | Case No. 3:18-cv-04819-WHO<br><br>**ORDER ON MOTION FOR PRELIMINARY INJUNCTION, MOTIONS TO DISMISS AND STRIKE, AND MOTIONS TO SEAL**<br><br>Re: Dkt. Nos. 28, 30, 31, 34, 35, 55, 60, 64, 68 |

## INTRODUCTION

Way.com, Inc. ("Way"), an online marketplace for parking spot reservations (among other things), brings this action against its former employee Mohinder Singh and two of its competitors, OneStopParking.com, LLC ("OneStop") and Parkway Parking LLC ("Parkway") (collectively, "defendants"). Way alleges that the defendants improperly used its trade secrets in violation of federal and state law after Singh abruptly resigned from Way and began working with the defendants.

Before me are several motions. First, Singh and OneStop move to dismiss the first amended complaint. Second, Way moves for a preliminary injunction enjoining defendants from using or disclosing Way's trade secrets and from soliciting business from parking partners that Singh learned about through his employment with Way. Third, the defendants move to strike a letter Way submitted after the hearing. Fourth, the parties file motions to seal. I will deny the motions to dismiss because Way's claims are plausibly alleged. However, Way has not established any of the requisites for the extraordinary relief requested at this state of the case, and I deny the motion for a preliminary injunction. I also grant defendants' motion to strike the letter and will wait to rule on the motions to seal to give the parties the chance to amend them in

conformity with the Civil Local Rules and my Standing Order on Motions to Seal.

## BACKGROUND

Way is an online marketplace for movie and event tickets, food delivery, and parking services. First Amended Complaint ("FAC") [Dkt. No. 21] ¶ 9. Through its partnerships with businesses like airports and hotels, Way provides an online inventory of available parking spots and allows its users to purchase a reservation in advance. *Id.* ¶ 10.

Way hired Singh as an account manager in late December 2016. *Id.* ¶ 11. As part of his employment, Singh confirmed that he had received Way's employee handbook and signed Way's Proprietary Information and Inventions Agreement ("PIIA"). *Id.* ¶¶ 11, 14; Deposition of Mohinder Singh ("Singh Depo.") [Dkt. No. 55-3] 40:22–41:5. These agreements imposed on Singh responsibilities including (1) keeping Way's trade secrets confidential, (2) using company technology for company business only, and (3) not competing with the company or helping others to do so. FAC ¶¶ 12–15; Singh Depo. 41:22–42:13. Through his role as an account manager, Singh worked with Way's parking partners to improve relationships and increase revenue for both Way and the partner businesses. FAC ¶ 15.

In November 2017, Singh reached out to Parkway looking for a job. Singh Depo. 26:20–25; *see also* Armstrong Decl. Ex. 5 [Dkt. No. 56-4] (later correspondence between Singh and Anthony Maenza of Parkway). He helped Parkway develop relationships with three parking locations while he was still employed with Way. Singh Depo. 23:2–8. He was not compensated but rather did it to "help them out." *Id.* 25:1–10. He believed that because he did not receive compensation, he did not violate his agreements with Way. *Id.* 84:21–85:25.

In July 2018, Singh approached OneStop looking for a job. *Id.* 28:3–15. On July 26, 2018, Singh did not come into Way's Fremont, California office. He did not give notice that he would be away and he was not traveling for business. FAC ¶ 17. On that day, he accessed a spreadsheet that "contain[ed] highly confidential information about the top revenue generating accounts for Way and detail[ed] the contractual agreements that Way has with these partners" ("the Spreadsheet"). *Id.* ¶ 23; *see* Bose Decl. Ex. F. Given Singh's responsibilities, he had no reason to access the Spreadsheet. *Id.* ¶ 23.

1          On July 27, Singh sent a letter of resignation to Way management, human resources, and

2   some of his colleagues. *Id.* ¶ 16. He did not provide a reason for his resignation, which was

3   effective immediately. *Id.* He informed Way that he would return the company laptop. *Id.*

4          On July 28, chief operating officer Sharada Bose learned from a Way parking partner that

5   Singh had invited it to partner with his new company, OneStop. *Id.* ¶ 18. On July 31, Singh

6   received an email that a second partner had sent to his Way account. *Id.* ¶ 21. Attached to the

7   email was a contract between that partner and OneStop, which Singh had signed on behalf of

8   OneStop on July 30. *Id.* The contract contained the term "reservation days," a phrase coined by

9   Way's founder. *Id.* ¶ 22. The partner on the contract was listed on the Spreadsheet Singh

10   accessed on July 26. *Id.* ¶ 23.

11         On August 3, 2018, one week after his resignation letter, Singh accessed the company's

12   laptop to ensure that he was signed out of his personal email. Singh Depo. 47:17–23. He mailed

13   the company laptop on August 5, and Way received it on August 7. FAC ¶ 20. Upon inspection

14   of the laptop, Way learned that Singh had attempted to delete sensitive company files. *Id.* On

15   September 12, it heard from a third partner that Parkway had approached it with a partnership

16   proposal and mentioned Singh. *Id.* ¶ 24.

17         Way initiated this action on August 9, 2018 and filed an amended complaint on October 4,

18   2018.[1] It alleges that defendants misappropriated trade secrets and aided and abetted in the

19   misappropriation of trade secrets in violation of the Defense of Trade Secrets Act ("DTSA"), 18

20   U.S.C. § 1836 and California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426. It

21   also alleges that Singh violated the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030,

22   and breached his contract with Way.

23         On October 19, 2018, Way filed a motion requesting a temporary restraining order

24   preventing all defendants from using or disclosing its trade secrets. Motion for a Temporary

25   Restraining Order ("Way Mot.") [Dkt. No. 31]. After a phone conference with counsel, I

26   converted the motion into one for a preliminary injunction, created a briefing schedule, and

27

28        
---
[1] Summons was issued as to Parkway on October 5, 2018. Summons [Dkt. No. 24].

ordered certain expedited discovery. Minute Entry [Dkt. No. 36]. Way deposed Singh on November 12 and 13, 2018, and defendants deposed Sarada Bose, Way's chief operating officer and the person most knowledgeable of the manner in which Way protects its trade secrets, on November 13, 2018. I heard argument on the motions on December 5, 2018.

## LEGAL STANDARD

### I.     MOTIONS TO DISMISS

#### A.     Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure is a challenge to the court's subject matter jurisdiction. *See* FED. R. CIV. P. 12(b)(1). "Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the authority to grant the relief requested. *Id.*

A challenge pursuant to Rule 12(b)(1) may be facial or factual. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the jurisdictional challenge is confined to the allegations pled in the complaint. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). The challenger asserts that the allegations in the complaint are insufficient "on their face" to invoke federal jurisdiction. *See Safe Air Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). To resolve this challenge, the court assumes that the allegations in the complaint are true and draws all reasonable inference in favor of the party opposing dismissal. *See Wolfe*, 392 F.3d at 362.

#### B.     Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (citation omitted).  There must be "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff.  *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## II.     PRELIMINARY INJUNCTION

Federal Rule of Civil Procedure 65 governs preliminary injunctions and temporary restraining orders.  FED. R. CIV. P. 65.  A preliminary injunction may be issued if a plaintiff establishes:  (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest.  *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  "Injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Id.* at 22.  The Ninth Circuit has held that "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met."  *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

## DISCUSSION

## I.     MOTIONS TO DISMISS AND STRIKE

Singh filed motions to dismiss and strike, which I will deny because Way states a claim and because the motion to strike was improper.  OneStop filed a motion to dismiss for lack of jurisdiction and failure to state a claim, which I will deny because it is proper to assert personal

jurisdiction and because Way states a claim.

**A.    Singh's Motions**

Singh argues that Way inadequately pleaded its claims under CUTSA, the DTSA, and the CFAA. He asserts that CUTSA preempts Way's breach of contract claim and further that the claim is in fact an unenforceable covenant not to compete. Finally, he moves to strike Way's claims for punitive damages and attorney fees on the grounds that there are insufficient facts alleged to support them. Singh Motion to Dismiss ("Singh MTD") [Dkt. No. 34].

**1.    Whether Way States A Claim For Misappropriation Of Trade Secrets**

Way brings claims against Singh for misappropriation of trade secrets under CUTSA and the DTSA. Singh argues that Way fails to sufficiently identify its trade secrets and to allege sufficient facts to support the remaining elements. Singh MTD 3–6.

"[U]nder the DTSA and the CUTSA, a plaintiff must allege (1) that it is the owner of a trade secret; (2) that the defendant misappropriated the trade secret; and (3) that it was damaged by the defendant's actions." *Alta Devices, Inc. v. LG Elecs., Inc.*, No. 18-CV-00404-LHK, 2018 WL 5045429, at *8 (N.D. Cal. Oct. 17, 2018).[2] While the complaint need not outline all the details of the trade secret, it must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Vendavo, Inc. v. Price f(x) AG*, No. 17-CV-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018) (internal quotation marks and citations omitted). Many courts also require allegations showing that (4) "the owner has made 'reasonable' efforts to keep secret" and (5) the secret "derives independent economic value . . . from not being generally known to other persons." *Beckton, Dickinson & Co. v. Cytek Biosciences, Inc.*, 18-cv-00933-MMC, 2018 WL 2298500, at *2 (N.D. Cal. May 21, 2018).

Singh argues that Way's complaint is bereft of information that could be considered a trade

---

[2] Despite the recent decisions coming out of this district, Singh cites to a 1968 California court of appeal case in support of his motion. *See* Singh MTD 4; *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 250 (1968).

secret.[3]  Singh MTD 4.  Way counters that it identified its trade secrets with particularity and identified a single document—the Spreadsheet—that contains those trade secrets.  Opposition to Singh MTD ("Oppo. to Singh MTD") 1–4; FAC ¶ 23.  The alleged trade secrets include:

> a. The amount Way is willing to pay parking partners in order to reserve a block of parking spaces;
> b. The process by which Way determines how to launch and market certain parking locations;
> c. The methods by which Way conducts its accounting operations; and
> d. The methods by which Way resolves technical difficulties on its platform.

*Id.* ¶ 25.  Way alleges that Singh improperly accessed the Spreadsheet, sent Way's trade secrets to his personal email account, and disclosed them to OneStop and Parkway.  *Id.* ¶¶ 23, 28, 34.  Way asserts that it suffered damages as a result of Singh's actions.  *Id.* ¶¶ 36, 51.  It makes efforts to keep the trade secrets confidential by allowing only necessary employees to access them and by requiring them to sign non-disclosure agreements.  *Id.* ¶ 33.  Finally, it derives economic value from the trade secrets not being known.  *Id.* ¶ 32.  These allegations are sufficiently particular to give defendants notice of the boundaries of the trade secrets Way asserts.  Singh's motion to dismiss on these grounds is DENIED.

### 2.    Whether Way States a Claim under the Computer Fraud and Abuse Act

"The CFAA prohibits a number of different computer crimes, the majority of which involve accessing computers without authorization or in excess of authorization, and then taking specified forbidden actions, ranging from obtaining information to damaging a computer or computer data."  *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1131 (9th Cir. 2009); *see* 18 U.S.C. § 1030(a)(1)–(7).  To state a private cause of action, a "plaintiff must prove that the defendant violated one of the provisions of § 1030(a)(1)-(7), and that the violation involved one of

---

[3] Singh also argues that Way's claim is really a covenant not to compete, which is generally unenforceable in California.  Singh MTD 6.  Way counters that it does not seek to prevent Singh from pursuing and continuing employment relationships with the defendants; rather, defendants "remain free to compete with Way so long as they do so fairly without misappropriating Way's Trade Secrets."  Oppo. to Singh MTD 4–5.  I agree with Way that it could be entitled to relief without that relief improperly functioning as a covenant not to compete.

the factors listed in § 1030(a)(5)(B).[4]" *Brekka*, 581 F.3d at 1131. Way brings claims based on sections 1030(a)(4) and (a)(5)(A).

"To bring an action successfully under § 1030(g) based on a violation of § 1030(a)(4), [Way] must show that [Singh]: (1) accessed a 'protected computer,' (2) without authorization or exceeding such authorization that was granted, (3) 'knowingly' and with 'intent to defraud,' and thereby (4) 'further[ed] the intended fraud and obtain[ed] anything of value,' causing (5) a loss to one or more persons during any one-year period aggregating at least $5,000 in value." *Brekka*, 581 F.3d at 1132. To bring an action successfully based on a violation of (a)(5)(A), Way must show that Singh "knowingly cause[d] the transmission of a program, information, code, or command, and as a result of such conduct, intentionally cause[d] damage without authorization, to a protected computer." 18 U.S.C. § 1030(a)(5)(A).

Way pleads sufficient facts to state a claim under the CFAA. It asserts that Singh improperly accessed his Way laptop after his resignation despite an express prohibition not to do so. FAC ¶ 64. He allegedly did so knowingly and with intent to obtain Way's trade secrets, which he did in fact obtain. *Id.* ¶¶ 65–66. These actions caused Way to suffer damages, including loss to the integrity of its trade secrets and expenditure of funds in order to investigate the unauthorized access. *Id.* ¶¶ 67–68. In the only case Singh relies on in support of his motion, the Ninth Circuit affirmed summary judgment on the CFAA claim when the employer could present

---

[4] The factors set forth in § 1030(a)(5)(B)(i)-(v) are:

> (i) loss to 1 or more persons during any 1–year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value;
> (ii) the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals;
> (iii) physical injury to any person;
> (iv) a threat to public health or safety; or
> (v) damage affecting a computer system used by or for a government entity in furtherance of the administration of justice, national defense, or national security . . . .

18 U.S.C. § 1030(a)(5)(B).

no reliable[5] evidence that the employee had in fact logged onto the employer's website after his employment ended. *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009). Way pleads that Singh did precisely that. Singh's motion to dismiss the CFAA claim is DENIED.

### 3. Whether Way States a Claim for Breach of Contract

To state a claim for breach of a contract, a plaintiff must plead: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom." *Kaar v. Wells Fargo Bank, N.A.*, No. C 16-01290 WHA, 2016 WL 3068396, at *1 (N.D. Cal. June 1, 2016) (Alsup, J.) (internal quotation marks and citation omitted).

Singh first argues that CUTSA preempts the breach of contract action because is nothing more than a restatement of Way's misappropriation of trade secrets claim. Singh MTD 9. But as Way points out, the CUTSA expressly states that it "does not affect (1) contractual remedies, whether or not based upon misappropriation of a trade secret . . . ." Cal. Civ. Code § 3426.7; *see Loop AI Labs Inc v. Gatti*, No. 15-CV-00798-HSG, 2015 WL 5158461, at *3 (N.D. Cal. Sept. 2, 2015).

Singh next argues that the breach of contract claim is in fact Way's attempt to enforce an unlawful covenant not to compete. Singh MTD 9; *see* Cal. Bus. & Prof. Code § 16600 ("Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."). But Way alleges that Singh violated his contract with Way while he remained employed with the company, when section 16600 would not be implicated. Singh cites no cases in support of his argument. His motion to dismiss the breach of contract claim is DENIED.

### 4. Way's Claims for Punitive Damages and Attorney Fees

Singh argues that I should strike Way's claim for punitive damages and for attorney fees because they fail to meet the pleading standards of Rule 12(f) of the Federal Rules of Civil Procedure. Singh Motion to Strike [Dkt. No. 35] 2, 4. Specifically, the complaint does not

---

[5] The employer had presented contradictory evidence with no explanation for those contradictions. *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009). The Ninth Circuit concluded that the trial court had not erred in resolving those ambiguities in favor of the defendant. *Id.*

9

adequately plead that he engaged in despicable conduct. *Id.* 2–3. Way argues that Rule 12(f) is not a valid basis for Singh's motion. Opposition to Motion to Strike [Dkt. No. 44] 2, 4.

In *Whittlestone*, the Ninth Circuit held, "Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law."[6] *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 975 (9th Cir. 2010). More than one court in this district has applied *Whittlestone* to a motion to strike a prayer for attorney fees. *See First Nat. Ins. Co. of Am. v. Peralta Cmty. Coll. Dist.*, No. 12-CV-5943 JSC, 2013 WL 622944, at *8 (N.D. Cal. Feb. 15, 2013); *Finuliar v. BAC Home Loans Servicing, L.P.*, No. C-11-02629 JCS, 2011 WL 4405659, at *14 (N.D. Cal. Sept. 21, 2011).

Singh, who did not file a reply, provides no arguments against *Whittlestone*'s application here. His motion to strike punitive damages and attorney fees is DENIED.

**B.  OneStop's Motion**

OneStop moves to dismiss Way's claims because this court lacks personal jurisdiction over it and because Way fails to state a claim. OneStop Motion to Dismiss ("OneStop MTD") [Dkt. No. 28]. I will deny it.

**1.  Whether There Is Personal Jurisdiction Over the Claims Against OneStop**

OneStop argues that Way has failed to establish that there is personal jurisdiction over the claims against it because it has no physical presence in California and its relationships with only five parking parners predate its relationship with Singh. OneStop MTD 9, 15–17. Way argues that there is specific jurisdiction[7] over the claims because "this case arises out of [OneStop's] contacts with this venue." Opposition to OneStop MTD ("Oppo. to OneStop MTD") [Dkt. No. 40] 2.

California's long-arm statute permits the exercise of personal jurisdiction to the maximum

---

[6] The court came to this conclusion in order to avoid reading Rule 12(f) in a way that would create redundancies within the Federal Rules of Civil Procedure given that Rule 12(b)(6) already provides a basis to strike portions of the pleadings. *Whittlestone*, 618 F.3d at 975.

[7] Way does not argue that there is general jurisdiction over OneStop, which is incorporated and has its principal place of business in Kentucky. Oppo. 2 n. 1; FAC ¶ 3.

10

extent permitted under the Due Process Clause of the Constitution. CAL. CIV. PROC. CODE § 410.10. Due process requires that the defendant have "minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). Those contacts may give rise to either general or specific jurisdiction. A court has general jurisdiction over a party when its "affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State," meaning any claims against the party can be brought there. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (internal quotations, citation, and formatting omitted). Except in an "exceptional case," general jurisdiction is limited to the place of incorporation and the principal place of business. *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (internal quotation marks omitted). A court has specific jurisdiction over a party who has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985), and the suit "arises out of or relates to" those contacts. *Daimler*, 571 U.S. at 127. The "primary concern" of the personal jurisdiction analysis is the burden it might pose on the defendant. *Bristol–Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017).

The Ninth Circuit applies a three-prong test to determine whether a defendant has minimum contacts with the forum such that it is subject to personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 672 (9th Cir. 2012). Way has the burden of establishing the first two prongs, and if it does so then "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

### a.     Purposeful Direction

OneStop argues that it has not accepted California-based business referrals from Singh and that it has no familiarity with how Way conducts its affairs.  OneStop MTD 15.  Way argues that OneStop purposefully directed its activities toward California by "intentionally us[ing] information provided by Singh to illicitly obtain Way's business partners."  Oppo. to OneStop MTD 4.  Way asserts that OneStop knew it was located in California[8] and entered into a consulting agreement with Singh, a California resident.  *Id.* 6–7.  While this is a close question, I find that purposeful direction exists here.

Courts analyze purposeful direction under the "effects test."  *Calder v. Jones*, 465 U.S. 783, 783 (1984).  "[T]he defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."  *Enertrode, Inc. v. Gen. Capacitor Co. Ltd*, No. 16-CV-02458-HSG, 2016 WL 7475611, at \*4 (N.D. Cal. Dec. 29, 2016) (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006)) (internal quotation marks and formatting omitted).  A plaintiff successfully shows express aiming by pleading that the defendant "engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state."  *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

In *Calder*, the Supreme Court held that there was specific jurisdiction in California over a reporter and an editor who worked out of state.  465 U.S. at 791.  Although the defendants acted from Florida, the "effects" were felt in California, where the subject of the allegedly libelous story lived and worked.  *Id.* at 788–89.  The defendants "knowingly cause[d] the injury in California."  *Id.* at 790.  Their actions were in fact "calculated" to do so.  *Id.* at 791.

By contrast, in *Walden* the Supreme Court concluded that actions outside the forum were insufficient for specific jurisdiction because the defendant's actions were not directed at the forum itself.  *Walden v. Fiore*, 571 U.S. 277, 288 (2014).  The defendant allegedly violated the Nevada

---

[8] At the hearing on these motions, Way raised the fact that Singh shared Way contracts with OneStop, which documents produced by defendants confirm.  Armstrong Decl. Ex. Ex 9, ECF p. 7–8.  The contracts Singh shared display Way's Fremont, California address at the top of the page. *Id.*

plaintiffs' Fourth Amendment rights in an airport in Georgia. Noting that the proper inquiry goes to "whether the *defendant's* actions connect him to the *forum*"—not merely residents of the forum—the Court concluded that there was no personal jurisdiction over the defendant in Nevada. *Id.* at 285, 289. By contrast with *Calder*, where the forum state was the focal point of the defendants' activities, in *Walden* the defendant "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada." *Id.* at 289.

In *CollegeSource*, the Ninth Circuit reversed dismissal on personal jurisdiction grounds because defendant's purported unawareness that the plaintiff was based in California was "implausible, to say the least." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1078 (9th Cir. 2011). The parties were "direct competitors in a relatively small industry." *Id.* Defendant's employees had registered on the plaintiff's platform to assess the produc, and defendant's leadership had attempted to contact plaintiff's leadership more than once in an effort to do business together. *Id.* at 1078–79. The court concluded that the defendant's "assertion that it was fortunate enough to obtain for free, unintentionally and unknowingly, the material that it had once unsuccessfully attempted to purchase strains credulity." *Id.* at 1079.

In *Enertrode*, a court in this district concluded that the defendants had expressly aimed their conduct at California because they "misappropriated [the plaintiff's] trade secrets" while "aware that [the plaintiff] was a California corporation with its principal place of business in California." *Enertrode, Inc. v. Gen. Capacitor Co. Ltd*, No. 16-CV-02458-HSG, 2016 WL 7475611, at *4 (N.D. Cal. Dec. 29, 2016). The parties had previously had dealings and entered into a license agreement. *Id.* at *4. The court noted, "The Ninth Circuit has 'repeatedly held that a corporation incurs economic loss, for jurisdictional purposes, in the forum of its principal place of business.'" *Id.* at *4 (quoting *CollegeSource*, 653 F.3d at 1079).

Way alleges sufficient facts to show that OneStop purposefully directed its activities toward California. *See* FAC ¶ 7. The contracts Singh sent prominently displayed Way's Fremont, California address. Armstrong Decl. Ex. Ex 9, ECF p. 7–8. Accordingly, OneStop knew that the harm its actions caused would be suffered by a California company. *See CollegeSource*, 653 F.3d at 1079. The facts as developed so far may not rise to the level of those in *CollegeSource* and

*Enertrode*, where the defendants had researched, attempted to do business with, and actually done business with the plaintiff, and OneStop's relationship with Singh standing alone would not likely be enough to show purposeful direction.[9] The record does, however, properly show that OneStop purposefully directed its activities at California when it allegedly stole the trade secrets of a company it knew to be based in California, causing harm it knew would be suffered here. *See Dole*, 303 F.3d at 1111.

### b. Arises Out Of Or Relates To

"The Ninth Circuit relies on a 'but for' test to determine whether a particular claim arises out of forum-related activities and thereby satisfies the second requirement for specific jurisdiction." *Enertrode*, 2016 WL 7475611, at *5 (quoting *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995)) (internal quotation marks omitted).

OneStop argues that the claims against it do not arise out of or relate to its contacts with California because it has never traveled to California to do business with Singh. OneStop MTD 16. But Way plausibly alleges that but for OneStop's misappropriation of its trade secrets—which occurred by and through OneStop's relationship with Singh—Way would not have been harmed. This prong is satisfied.

### c. Reasonableness

Because Way has established the first two prongs of the analysis, the burden shifts to OneStop to "present a compelling case" that the exercise of personal jurisdiction would not comply with fair play and substantial justice. *Schwarzenegger*, 374 F.3d at 802. The Ninth Circuit analyzes seven factors to determine reasonableness:

> (1) the extent of the defendant's purposeful interjection into the forum state's

---

[9] Way quotes a central district court as saying, "In the Ninth Circuit, the 'purposeful availment' requirement is satisfied if a defendant has taken deliberate action within the forum state or if it has created continuing or ongoing obligations to forum residents." *World Skateboarding Fed'n, Inc. v. Int'l Skateboarding Fed'n*, No. 216CV02065, 2017 WL 1153120, at *4 (E.D. Cal. Mar. 27, 2017). In that case, the court concluded that the defendant had purposefully directed its activities toward California where it held at least six meetings there, advertised California events on its website, did business with California corporations, and received endorsements from California organizations. *Id.* Those facts stand apart from OneStop's actions here. OneStop also asserts that it has no "contractual obligation to accept any vendor referrals delivered by Mr. Singh." Declaration of Devesh Patel [Dkt. No. 29] ¶ 13.

affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Menken v. Emm*, 503 F.3d 1050, 1060 (9th Cir. 2007).

OneStop argues that it would be unreasonable to assert jurisdiction over it because it does not have an operations presence in California, its only business exposure in California is minimal and non-exclusive, it is a small organization that operates exclusively in Kentucky, Way has no particular need to litigate this case in California, and this case could be adjudicated in Kentucky. Reply 5. These facts do not present a compelling case given California's interest in adjudicating the allegations that OneStop worked with a California resident to knowingly misappropriate the trade secrets of a California company.

I conclude that it is appropriate to assert personal jurisdiction over OneStop because it purposefully directed wrongful conduct toward California and this suit arises out of those activities. OneStop's motion to dismiss on these grounds is DENIED.

### 2. Whether Way States A Claim for Trade Secret Misappropriation

OneStop challenges the trade secret misappropriation claims against it on two grounds. First, Way failed to adequately identify its trade secrets. OneStop MTD 23–24. Second, Way does not adequately allege wrongdoing by OneStop. OneStop MTD 22.

As I concluded above, Way adequately identified its trade secrets. *See supra* Section I.A.1 – Whether Way States a Claim for Misappropriation of Trade Secrets. Way argues that it sufficiently alleges wrongdoing by asserting that OneStop misappropriated Way's trade secrets for its own benefit after improperly obtaining them from Singh. FAC ¶¶ 25, 50. Way's allegations are sufficient to state a claim. OneStop's motion to dismiss on these grounds is DENIED.

## II. MOTION FOR PRELIMINARY INJUNCTION

Way moves for a preliminary injunction to enjoin defendants from continuing to use or disclose its trade secrets. It argues that a preliminary injunction is appropriate because (1) it is likely to succeed on the merits of its claims under CUTSA and the DTSA; (2) it stands to suffer

irreparable injury if the defendants are allowed to continue using its trade secrets; (3) a preliminary injunction is in the public interest in upholding confidentiality and nondisclosure agreements between employers and their employees; (4) and the balance of hardships strongly favors a preliminary injunction because it will only prevent defendants from engaging in competition that is unlawful.

Defendants challenge Way's motion on a variety of grounds. They argue that Way is unlikely to succeed on the merits because the information it asserts cannot constitute trade secrets and because it did not adequately protect the information. They further assert that Way cannot show irreparable harm, the public interest disfavors a preliminary injunction, and the balance of hardships tips in their favor.

### A.    Likelihood of Success on the Merits

Way argues that it is likely to succeed on the merits because Singh and the defendants misappropriated its trade secrets—partnership information, contracts, and pricing metrics—in violation of CUTSA and the DTSA. Defendants argue that Way is unlikely to be able to show protectable trade secrets or reasonable efforts to protect them.

A prima facie case for misappropriation of trade secrets requires a plaintiff to show: "(1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff." *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 873 F. Supp. 2d 1192, 1212 (N.D. Cal. 2012), *on reconsideration in part,* No. C 10-3428 PSG, 2012 WL 12925716 (N.D. Cal. July 8, 2012). In addition, many courts require a showing that (4) "the owner has made 'reasonable' efforts to keep secret" and (5) the secret "derives independent economic value . . . from not being generally known to other persons." *Beckton, Dickinson & Co. v. Cytek Biosciences, Inc.*, 18-cv-00933-MMC, 2018 WL 2298500, at *2 (N.D. Cal. May 21, 2018).

The defendants first assert that Way fails to allege information that can be considered a trade secret because its customer lists are published on its website, and similar pricing models are widely used throughout the industry. *See* Singh Opposition ("Singh Oppo.") [Dkt. No. 42] 9–12; Parkway Opposition ("Parkway Oppo.") [Dkt. No. 46] 6–7. The defendants next contend that

1   even if the information was trade secrets, Way cannot show that it made sufficient efforts to

2   protect them because its partners were free to disclose information at any time.  *See* Singh Oppo.

3   9–12; Parkway Oppo. 6–7.

4          Customer lists can qualify as a trade secret, *Abba Rubber Co. v. Seaquist*, 235 Cal. App. 3d

5   1, 18 (1991), but when customer information is "readily ascertainable through public sources" it is

6   less likely to be protectable.  *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1521 (1997) (internal

7   quotation marks omitted).  "As a general principle, the more difficult information is to obtain, and

8   the more time and resources expended by an employer in gathering it, the more likely a court will

9   find such information constitutes a trade secret."  *Id.* at 1522.  The identity of businesses who

10  work with a competitor may be valuable "if it indicates to them a fact which they previously did

11  not know:  that those businesses use the goods or services which the competitors sell."  *Abba*, 235

12  Cal. App. 3d at 19.

13         There are several reasons why Way's customer list and pricing models are not likely to be

14  considered trade secrets.  First, the customer list is "readily ascertainable through public sources,"

15  namely Way's own website.  *See* Bose Depo. 27:9–11; *Morlife*, 56 Cal. App. 4th at 1521.  In

16  addition, contact information of partners' key decision makers is not likely difficult enough to

17  obtain to be considered a trade secret.  Second, Way's competitors would likely gain little by

18  learning the businesses with whom Way partners because it is evident that all businesses with

19  parking lots might choose to sell those spots through an online marketplace like Way.  *See Abba*,

20  235 Cal. App. 3d at 19.  Third, the pricing models Way uses are not unique but rather widely used

21  throughout the industry.  *See* Singh Decl. ¶¶ 14–16; Lopez Decl. ¶¶ 4–8; Porter Decl. ¶¶ 4–8.

22         Even if Way could successfully show that the information constitutes trade secrets, it is

23  unlikely to be able to show that it used reasonable means to protect them.  Way's person most

24  knowledgeable testified that it protects all its asserted trade secrets by requiring employees to sign

25  an Employee Handbook and PIAA agreement.  Bose Depo. 54:5–8.  It uses no other methods of

26  protection.  *Id.* 54:9–11.  Accordingly, parking partners do not have to sign nondisclosure

27  agreements.  Bose Depo. 28:15–23.  They are free to share with others the fact of their partnership

28  with Way along with the precise details of the agreement—from structure to price to number of

spots. *Id.* 28:15–23, 38:11–17.  As noted above, Way also publishes the names of its partners on its website.  Finally, the Spreadsheet was available to every employee of the company, whether or not their job responsibilities required them to reference it.  Bose Depo. 24:20–21 ("[I]t was a common document that everybody could access within the company.").

The cases Way cites do not show it is likely to succeed on the merits.  In *Reeves*, the court affirmed a finding that the defendants had violated CUTSA where it was undisputed that plaintiffs took reasonable efforts to maintain the secrecy of their client list, which derived independent economic value from that secrecy.  *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1155, 95 P.3d 513, 522 (2004).  In *Hilderman*, the court denied summary judgment on the grounds that a fact finder could conclude that the plaintiff derived economic value from keeping pricing differences among customers a secret and only the plaintiff knew those differences.  *Hilderman v. Enea TekSci, Inc.*, 551 F. Supp. 2d 1183, 1200 (S.D. Cal. 2008).  In *Brocade*, the court denied summary judgment on the grounds that "customer lists and contact information, pricing guidelines, historical purchasing information, and customers' business needs/preferences" could be a protectable trade secret. *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 873 F. Supp. 2d 1192, 1214 (N.D. Cal. 2012), *on reconsideration in part,* No. C 10-3428 PSG, 2012 WL 12925716 (N.D. Cal. July 8, 2012).  The court in that case noted that information is more likely protectable when the plaintiff "has expended time and effort identifying customers with particular needs or characteristics," as opposed to lists that have only information readily ascertainable through public sources.  *Id.*

Way's showing on all of these points is significantly weaker.  The information Way asserts is no doubt important to its business, but that does not make it likely to be protectable trade secrets.  Way has not shown a likelihood of success on the merits.

**B.    The Remaining Elements**

Way argues that without a preliminary injunction, the defendants will continue to use its trade secrets to secure partnerships and negotiate prices.  Mot. 14.  But Way waited until October 19, 2018 to file its motion for a TRO despite learning about Singh's alleged conduct as early as

July 28, 2018.[10] *See* FAC ¶ 18. "[A plaintiff's] long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm." *Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985). The balance of hardships also seems to weigh against an injunction, which defendants argue would essentially put them out of business. *See* Singh Sur-Reply [Dkt. No. 63] 13; Parkway Oppo. 7.

A preliminary injunction is an extraordinary remedy, and one not warranted in this case. Way's motion is DENIED.

## III. DEFENDANTS' MOTION TO STRIKE

Defendants move to strike a letter Way submitted on December 6, 2018, the day after the hearing on these motions. Dkt. Nos. 67, 68. Way asserts that it filed the letter "to provide additional legal authority and details" because certain facts were learned after its opposition was due. It did not seek approval to file the letter or a sur-reply.[11]

Under Civil Local Rule 7-3, "Once a reply is filed, no additional memoranda, papers or letters may be filed without prior Court approval." CIVIL L.R. 7-3(d). The rule provides two exceptions: a party may object to reply evidence within seven days after it is filed, and a party may file a Statement of Recent Decision before a noticed hearing date. *Id.* 7-3(d)(1)–(2). Way's letter does not purport to fall within either of those exceptions, nor does it. Defendants' motion to strike the letter is GRANTED.

## IV. MOTIONS TO SEAL

A party seeking to seal court records must overcome a strong presumption in favor of the public's right to access those records. *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir.), *cert. denied sub nom. FCA U.S. LLC v. Ctr. for Auto Safety*, 137 S. Ct. 38 (2016). The Ninth Circuit imposes the "compelling reasons" standard on most motions to seal, which requires a court to explain its findings "without relying on hypothesis or conjecture." *Ctr.*

---

[10] At the hearing, Way stated that it hoped to resolve the parties' dispute through mediation.

[11] Defendants did seek such leave, and I allowed them to file sur-replies to address evidence produced after their oppositions to the motion for a preliminary injunction were due. Dkt. No. 58.

*for Auto Safety*, 809 F.3d at 1096–97. A "good cause" exception applies to some nondispositive motions, including those related to discovery. *Ctr. for Auto Safety*, 809 F.3d at 1097. Nondispositive motions that are "more than tangentially related to the merits of a case" remain subject to the compelling reasons standard. *Id.* at 1101.

The parties' motions fail to comply with the Local Rules and my Standing Order on Motions to Seal in several respects.[12] First, sealing requests be "narrowly tailored to seek sealing only of sealable material." CIV. L.R. 79-5(b). The parties here seek to seal entire pages of declarations, *see* Dkt. Nos. 30-3, 30-4, the entirety of deposition excerpts, *see* Dkt. Nos. 60-4, 60-5, and entire briefs, *see* Dkt. No. 55.[13] Second, "[r]eference to a stipulation or protective order that allows a party to designate certain documents as confidential is not sufficient to establish that a document, or portions thereof, are sealable." CIV. L.R. 79-5(d)(1)(A). The parties justify some requests only by stating that the documents are subject to a protective order and were designated as "Attorneys' Eyes Only." *See* Dkt. No. 64-1. Third, parties must submit a proposed order "which lists in table format each document or portion thereof that is sought to be sealed." CIV. L.R. 79-5(d)(1)(B). The parties failed to do so here.

As the motions stand, they would be denied for these failures; however, I will give the parties another chance to comply. Because the motions at issue are "more than tangentially related to the merits of [the] case," the sealing requests are subject to the compelling reasons standard. *See Ctr. for Auto Safety*, 809 F.3d at 1101. At this stage, Way may seek to seal information that it asserts as trade secrets along with testimony and argument that *specifically identifies* those trade secrets. It should meet and confer with defendants if it wishes for portions of defendants' arguments to be redacted. General references to the categories in which Way's trade secrets fall may not be sealed; for example, none of the references in this Order are sealable. The defendants may seek to seal specific contract terms only if they can submit a declaration articulating the harm

United States District Court
Northern District of California

---

[12] The parties should note that their errors are not necessarily limited to the Local Rules I cite; a general review of the rules is in order.

[13] The parties should note that the documents listed in this section are examples; I do not purport to provide an exhaustive list of the problematic submissions.

they would suffer if that information were to become public. Their assertions of harm cannot be based on "hypothesis or conjecture." *See Ctr. for Auto Safety*, 809 F.3d at 1096–97.

If the parties wish to correct these deficiencies, they are hereby ordered to amend their requests no later than January 7, 2018.

## CONCLUSION

For the foregoing reasons, Singh's motions to dismiss and strike are DENIED, OneStop's motion to dismiss is DENIED, and Way's motion for a preliminary injunction is DENIED. Defendants' motion to strike the December 6, 2018 letter is GRANTED, and the January 16, 2019 hearing on the motion is VACATED.

**IT IS SO ORDERED.**

Dated: December 20, 2018

William H. Orrick
United States District Judge